UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02135-SEB-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Rhonda H. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 423(d), 1382. For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

## I. Background

Claimant applied for DIB and SSI on January 19, 2017, alleging an onset of disability as of March 31, 2013. [Dkt. 14-2 at 15.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Jeanne M. VanderHeide ("ALJ") on July 15, 2019. *Id.* at 14-15. On July 29, 2019, the ALJ issued her determination that Claimant was not disabled. *Id.* at 26. The Appeals Council then denied Claimant's request for review on June 10, 2020. *Id.* at 1. Claimant timely filed her Complaint on August 12, 2020, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt.

---

[3] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

As an initial matter, the Commissioner previously denied Claimant's application for disability on July 7, 2014. [Dkt. 14-2 at 15.] Since Claimant alleged an onset of disability of March 31, 2013, the ALJ conducted a *res judicata* analysis and

3

> determined that there is no basis upon which to open the decision on the claimant's prior application (20 CFR 416.1488). Good cause has not been established and new. . . material evidence has not been submitted. Specifically, the claimant admitted that she received the previous denial. Moreover, the claimant noted that she was in the process of moving and followed up after she was settled but was told it was too late at that point and to refile. However, there is no evidence within the file to support the claimant's inability to file an appeal at that time. Furthermore, the relevant listings have not changed since the prior adjudication.

*Id.* at 16. Consequently, the ALJ considered whether Claimant was disabled from July 8, 2014, to the date of her decision. *Id.*

The ALJ next determined that Claimant had not engaged in substantial gainful activity since July 8, 2014, the earliest possible onset date of disability. *Id.* at 18. At step two, the ALJ found that Claimant had the following severe impairments: "migraines; degenerative disc disease of the lumbar spine; venous insufficiency, status post ablation procedure; and post ablation syndrome (multiple surgeries) (20 CFR 404.1520(c) and 416.920(c))." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant requires the ability to alternate between sitting and standing, wherein she is able to stand to stretch briefly after 45 to 60 minutes of sitting; the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs; the claimant can occasionally stoop, crouch, kneel, and crawl; the claimant can only have occasional exposure to extreme cold, wetness, or humidity; and the claimant must avoid exposure to unprotected heights.

*Id.* at 21.

At step four, the ALJ found that Claimant was able to perform her past relevant work as an administrative clerk during the relevant time period. *Id*. at 25. Accordingly, the ALJ concluded Claimant was not disabled. *Id*. at 26.

## IV. Discussion

On appeal, Claimant has argued that the ALJ errored by failing to give Claimant's treating physician's opinion controlling weight. [Dkt. 19 at 7.] Specifically, Claimant contends that the ALJ committed reversable error in failing to confront Claimant's treating physician's recommendation that she elevate her legs to help manage her chronic venous insufficiency. *Id.* at 8. Relatedly, Claimant argues that the ALJ mistakenly equated the successful ablation of her saphenous veins with an improvement in her symptoms. *Id.* at 12.

### A. Elevation of Legs

Claimant argues that the ALJ failed to account for Claimant's need to elevate her legs to alleviate her lower extremity swelling in her decision. [Dkt. 19 at 10-11] ("Compounding the issue of whether the ALJ even recognized that Dr. LeGrand's recommended limitation constituted a medical source opinion from a treating source physician is the fact that the ALJ completely ignored that portion of Dr. LeGrand's recommendations referring to elevation of the legs.").

Chief among an ALJ's duties is to articulate a Claimant's RFC. In doing so, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014); (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)); *see also Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000). Of course, as long as the ALJ has

created a logical bridge from the evidence to her conclusion, she need not address every snippet of information in the medical records that might possibly contradict the rest of the objective medical evidence.  *Pepper v. Colvin*, 712 F.3d 351, 362-63 (7th Cir. 2013).  Ultimately, the Court reviews the ALJ's decision deferentially, but cannot uphold the decision if it "fails to mention highly pertinent evidence."  *Parker v. Asture*, 597 F.3d 920, 921 (7th Cir. 2010); *see also Garfield v. Schweiker*, 732 F.2d 605, 609-10 (7th Cir. 1984); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984); *McNeil v. Califano*, 614 F.2d 142, 144-45 (7th Cir. 1980).

      To better understand Claimant's argument, it is helpful to review Claimant's medical history.  From 2017 through 2018, Dr. Daniel LeGrand saw Claimant at Johnson Memorial Health Vein and Wound Center for venous reflux disease.  [Dkt. 14-3 at 319; Dkt. 14-4 at 9.]  Throughout the course of her treatment, Claimant had ultrasounds, [Dkt. 14-3 at 319; Dkt. 14-4 at 103], and endovenous ablation procedures on both legs, [Dkt. 14-4 at 137, 195].  Despite both procedures being a success, Claimant continued to present with bilateral lower extremity pain, swelling, and discomfort.  *Id.* at 9.  Dr. LeGrand repeatedly instructed Claimant, both prior and post ablation, to "wear compression stockings, avoid standing for long period of time, elevate legs to the level of the heart or above for 30 minutes daily and/or when sitting…"  [Dkt. 14-3 at 322, 328; Dkt. 14-4 at 51, 171.]

      Reflecting on her medical history, Claimant testified at her hearing that "[t]he surgery did absolutely nothing."  [Dkt. 14-2 at 46.]  Claimant also stated that she still suffers from the swelling of her ankles and the bottom of her feet.  *Id.*  To try and help with the swelling, Claimant wears compression socks two to three times a week, *id.,* and she elevates her legs at waist height, *id.* at 54-55.  The ALJ and Claimant also had the following exchange at the hearing:

      Q:  . . . do you elevate your legs?

>A: Yes, several times a day.
>
>Q: And where are you sitting when you elevate your legs?
>
>A: Usually in the recliner chair or in my bed or—
>
>Q: And how, how long do you elevate them for? []
>
>A: It's according, it's according on where I'm sitting, usually at least 15, 20 minutes.
>
>Q: All right.
>
>A: Sometimes longer, sometimes shorter. Because it does help.

[Dkt. 14-2 at 54-55.]

The ALJ's RFC assessment did not account for all of Claimant's limitations—specifically, it did not explain how Claimant's edema factored, if at all, into her assessment or how the accompanying need of Claimant to elevate her legs would affect her ability to work. Not only can the Court find repeated mentions of Claimant's edema in the administrative record, Claimant, the ALJ, her attorney, and the VE all discussed Claimant's edema during the hearing. In fact, the VE testified that a person who needed to "elevate one or both legs at or above waist level say six times per day for 15-20 minutes" could not find a job in the national economy. [Dkt. 14-2 at 64.] Although the VE also testified that Claimant could find a job in the national economy if she only elevated her legs three times a day during her breaks, the ALJ's failure to confront the VE testimony at all is reversible error. *Id.*

> [W]hen the ALJ fails to mention rejected evidence 'the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty' it considering all the evidence. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant.

*Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (quoting *Zblewski*, 732 F.2d at 79). The Commissioner's post hoc justification argues that the record

7

> would suggest that she should avoid standing for long periods of time, and needed to elevate her legs for 30 minutes each day. Such limitations would be entirely consistent with the residual functional capacity as found by the ALJ, which limited her to a range of sedentary work, which by definition includes the least amount of standing of any category of work, and allowed her to alternate between sitting and standing at least every hour.

[Dkt. 20 at 9.] The Commissioner's justification is not sufficient. It is not for the Commissioner to find that Claimant's testimony is not consistent with the objective medial record. Nor is the Commissioner's argument that Dr. LeGrand's edema control notes are not "medical opinions" convincing for the reasons articulate below. *Id.* at 7. As already mentioned, the ALJ must confront all of the relevant medical evidence herself. This error necessitates a remand.

### B.  Treating Physician

The ALJ's failure to confront Dr. LeGrand's opinion regarding elevation of Claimant's legs is particularly troubling in light of the fact that Dr. LeGrand is a treating physician. Claimant argues that "the ALJ erred by failing to recognize Dr. LeGrand was a treating source physician whose recommendations regarding compression hose, prolonged standing, and the elevation of her legs when sitting constituted a medical source opinion. . . [are] entitled to controlling weight." [Dkt. 19 at 8.] In fact, Claimant argues, the ALJ failed to assign any weight at all to Dr. Le Grand's medical opinions. *Id.* at 9. Specifically, Claimant argues:

> A proper discussion of Dr. LeGrand's opinion would presumably include recognition of Dr. LeGrand's specialization as a vascular surgeon, his treating relationship with [Claimant] through 2017 and into 2018, and the fact that every office note following [Claimant's] initial evaluation includes recommendations that she wear compression stockings, avoid prolonged standing, and elevate her legs at heart level whenever possible when seated.

*Id.*

Because Claimant filed her applications for benefits before March 2017, the applicable law provides that a treating source's opinion[4] is entitled to controlling weight if it is: "(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *Burmester*, 920 F.3d at 512 (quoting *Id.*); *see also Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020). If an ALJ does not give a treating source's opinion controlling weight, the regulations require the ALJ to consider "the treatment relationship, frequency of examinations, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citations omitted). As long as the ALJ considers these factors and minimally articulates her reasons, the Court will uphold her decision not to assign controlling weight to a treating physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *see also Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (reasoning the ALJ must offer "good reasons" for discounting the opinion of a treating physician) (citations omitted).

The problem here is not so much that the ALJ failed to give Dr. LeGrand's medical opinion controlling weight so much as the ALJ failed to give Dr. LeGrand's opinions **any** assigned weight. Despite a prior summary of Claimant's medical history with Dr. LeGrand, the ALJ simply fails to assign any weight or even discuss the credibility of Dr. LeGrand's medical

---

[4] For claims filed after March 2017, an ALJ is not required to give special weight to the opinions of a disability applicant's treating physician. *See* 20 C.F.R. § 404.1520c. Instead, all medical opinions—from treating providers, Social Security's consultative examiners, and independent medical examiners—will be evaluated on an equal basis for "persuasiveness." The key factors a disability adjudicator will consider in evaluating the persuasiveness of an opinion are supportability and consistency. *See Id.* § 404.1520c(c)(1) and (c)(2).

opinion. This is particularly troubling in light of the fact that the ALJ explicitly assigned "some weight" to the State agency medical consultants. [Dkt. 14-2 at 24.]

The Commissioner's only response to the fact that the ALJ failed to assign weight to Dr. LeGrand's opinions is to argue that Dr. LeGrand's recommendations are not medical source opinions. [Dkt. 20 at 7.] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. §1527(a)(1). Therefore, the Commissioner argues, "the 'edema control' instructions reflected only suggestions and thus not true medical opinions about Plaintiff's ongoing functioning." [Dkt. 20 at 7.] In support of his argument the Commissioner cites *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) for the proposition that a "medical opinion is a statement that reflects a judgment about the nature and severity of the impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and any physical or mental restrictions." [Dkt. 20 at 7.] However, unlike in *Horr,* it is the Commissioner, not the ALJ arguing that Dr. LeGrand's recommendations do not constitute medical source opinions. This post hoc justification for the ALJ's omission is not sufficient particularly because it is unclear to the Court how a recommendation on how to control Claimant's edema is not a judgment on the Claimant's condition and thus a medical source opinion. Nor do the other cases the Commissioner cites help advance his argument. It is important to emphasize that the ALJ did not discount the treating physician, but completely failed to even address what weight, if any, to give to these recommendations. Recommendations that both the ALJ, VE, Claimant, and her attorney

discussed at the hearing. The ALJ's failure to provide any weight to the treating physician's medical opinion necessitates remand.

### C. Symptoms

Finally, on remand, the ALJ must also confront the evidence that despite the fact that both of Claimant's greater saphenous veins were successfully ablated, [Dkt. 14-2 at 23], Claimant still suffered from "bilateral lower extremity pain, swelling and discomfort related to dependency" [Dkt. 14-4 at 168-171]. In fact, Claimant also testified to the fact that "[t]he surgery did absolutely nothing" and her pain is still the same. [Dkt. 14-2 at 46.] Despite this testimony and evidence the ALJ only states:

> It was also noted that the claimant tolerated the ablation procedures well and that she had no complaints. Additionally, in a note from her treatment provider from January 2018, it was indicated that the left greater saphenous vein was successfully ablated. Moreover, diagnostic testing of the right lower extremity in January of 2018 also confirmed that the right great saphenous vein was successfully ablated. Repeat diagnostic testing in August of 2018 of the lower extremities further confirmed the successful radiofrequency ablations.

[Dkt. 14-2 at 22-23] (citations omitted.) The ALJ may not cherry-pick evidence that supports her conclusion and therefore must confront this evidence on remand.

### V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to

11

timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 2 AUG 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.